We will go on to case four, which is 21-26-97, James Courtney v. Kimberly Butler. Mr. McIntosh. Go ahead, if you're ready. I'm ready. Thank you, Your Honor, and may it please the court. My name is Ben McIntosh. I represent James Courtney in this appeal. This is an interesting case about how far the hack doctrine goes and whether it applies to a situation where a plaintiff bringing a section 1983 claim is actually trying to vindicate his judicial sentence, and specifically a period of mandatory supervised release within that sentence, or whether a parole board's determination that he didn't have a proper host site, but he should be released once he gets one, bars the section 1983 action. The district court dismissed the case by applying the hack doctrine, and that was error. That was incorrect. So the district court had its decision, I'll just tell you, fit with my instinctive reaction to this, my first impression in response to this, which is this looks a lot like a revocation of parole or a prison disciplinary case where it even uses a form about parole violation, right? But if I'm understanding this correctly, this is a decision that is not based on any misconduct by the prisoner in this case. That's absolutely correct, Your Honor. Okay. Now, who is, as you understand Illinois law and DOC policies, who is responsible for finding a suitable placement outside of prison where we have, in essence, a stalemate? The prisoner has submitted several options, and the board has said no, none of these is acceptable. So whose court is the ball in at that point? That's a really good question. So at the very beginning, of course, the offender provides their proposed host site, right? What the law says is that IDOC is supposed to provide assistance in finding a host site, and the testimony from the designee of Menard Correctional Center in this case says that, essentially, if it can't be found, IDOC does have a duty to help the offender find a host site. And now the really important piece, specific to the facts of this case, is that there was a single halfway house that no longer is available in the state of Illinois that could take offenders like Mr. Courtney, who is a sex offender. It's the St. Louis facility? Correct. It's called Another Chance Ministries. And we've got a factual dispute, as I understand it, as to whether his name was even submitted. You've got evidence that it was not. Actually, I don't think there is a dispute. I'll ask the other side of it. That was the testimony of their designee that he was never submitted. But the response to the grievance was, we did. Right. That was just erroneous. I don't think there's a dispute on this appeal that that was erroneous. And so what ended up happening, of course, is Mr. Courtney is told incorrectly that he's been submitted to a halfway house, which it was required. When he was violated at the door, it was required that they would put him through what was called the placement resource unit, if I'm getting that correct. And then they would place him in a halfway house. Well, that never occurred, but he was told it occurred. Mr. Godinez, the IDOC commissioner, was told that it occurred, but nobody looked into it. And he sat in prison for an additional year and was never released on MSR, even though he had met all the conditions to be released on MSR. And I think what's interesting about this case, and I think the briefing led us to this point. Really, the knife's edge of this appeal is that the parole board's determination that, essentially, Mr. Courtney couldn't be released on MSR yet, even though it had decided that right before his. Remember, June of 2013, the parole board said, Mr. Courtney can get out on MSR, right? Then he was violated at the door right on his release date without any notice beforehand on, I believe, October 4th or 5th, 2013. He goes before the parole board and they say, well, yeah, you can get out once you get a proper host site. Well, he had submitted two host sites that were never investigated. And then he was supposed to be submitted to the halfway house. It strikes me that the question, though, is the remedy, whether it's in a Section 193 case or whether it's something internal to IDOC. Because this is not the first time that an offender has had difficulty getting placed in a host site. Obviously, this is something that they run into all the time. So he does these internal grievances, these kites. He makes these attempts. The question is the path. Is it one path? Is it more than one path? And why is Section 1983 correct or incorrect? Well, I think that's a really good question, right? Because at the end of the day, what the heck doctrine is saying is there's this tension between habeas relief and Section 1983. We don't want to step on the toes of the state court. And we certainly are not trying to do that in this case. I think the key to heck, and I think what answers this question, is that the heck doctrine only applies if the federal court's action would necessarily imply that the state authority, whether the court or the board, was incorrect. And here, that's not the case. How is the MSR, though, not part of the sentence? It is part of the sentence, and that's the point. It was ignored. Courtney had a term of MSR in his judicial sentence. He was not – all that is – That's what he wanted. Exactly. He just wanted to get out with conditional liberty. That's it. It's similar to parole, but it's a mandatory part of the sentence. And he wasn't allowed to get out even though he had met all the conditions. So if we – if this goes back down and we go to trial and we prevail, well, then what the finding necessarily would be is that he did meet those conditions. And that's consistent with the parole board's revocation order, which said just meet your conditions, have a host site, and you're free to go. Yeah, but the problem there is he didn't meet the conditions in the sense that he didn't have an acceptable host site. Now, the question is why not? And it's because the sites he did approve – did propose were either disapproved or not considered or investigated, right? This is a – there's a logic loop that he ran into here. But I understood you to be saying that heck doesn't apply because this was not based on any finding of wrongdoing that would be undermined by granting this relief. Is that a fair statement? I think that's correct. I think that's correct, Your Honor. Because you can't – I don't think you want to take on the line of prison discipline or parole revocation decisions, right? And we're not. Ultimately, what we're saying is Courtney should have been let out, and this was a failure of administration. And the issue is, you know, I don't have a decision from this court that is as akin to this case as some of the district court decisions that we cited to. I can't remember the pronunciation of the case, but it starts with a T, like Tra-reek or Tra-zeek or something like that from the District Court of Louisiana. And it encountered a similar issue where the only reason that the offender didn't get out was because of deliberate indifference in not administering the – whether it's the orders of the parole board or the judicial sentence. And that's what happened here. Courtney had met the conditions of the parole board's order, but the people that he wrote those kites to, the people that he submitted those grievances to, they ignored him. I mean – and so at this point – and this goes back to Judge Hamilton's point, which I think is a really good one. If heck is applied in a situation like this, then you basically have to hold that you can put the offender in this impossible-to-escape catch-22 situation all by just ignoring that he did meet the conditions of parole. I mean he is told that he was being submitted to a halfway house, and now we're going to tell him, well, you should have filed a habeas petition? This is why it goes back to if the relief being sought is not inconsistent with the state court judgment or the state authority's findings, heck doesn't apply and the Section 1983 claim can proceed. So a couple of quick questions. Who is Sarah Brown Foiles in this case? Her deposition is cited often. I just didn't have a chance to hear. She was one of the designees from the Illinois Department of Corrections. So there's two designees in this case. She's the one who testified that he was not submitted to the halfway house. Exactly. And then this is a situation where, who knows, we may or may not agree with you about heck. We'll see. But if we do, it looks to me like you'd be looking at a situation on remand where you could have a lot of different individual defendants pointing at each other for the failure to get him released. And whether, is it the warden? Is it the PRU staff? I noticed that Mr. Christensen was dismissed. That's correct. Was that a settlement or something else? No, we didn't have evidence to support that he was responsible. So I just said, I told my client we should dismiss him and he agreed. Okay. But you've got, you may have a lot of this finger pointing for this kind of a situation. Sure. I think usually that benefits the plaintiff before the jury. Agreed. Okay. Thank you. What if Mr. Courtney had failed to find a host site? In other words, it was his fault that he had no allowed placement. Would the HECFAR apply? I don't believe so, Your Honor. I think this goes back to Judge Hamilton's first question, which is that while, yes, the offender does have a duty to start the ball rolling, IDOC and the employees involved, including the warden, specifically have a duty to assist with the placement and the testimony from their designee. I believe the Menard's designee and IDOC's designee is that when someone is violated at the door, it's required that they get put through the placement resource unit and potentially be put into a halfway house. Because, of course, we don't want to be keeping people in prison when they have a right to mandatory supervised release and conditional liberty. If the court doesn't have any further questions. Sure. Sure. Go ahead. Thank you. All right. Mr. Turner. Good morning, Your Honors. Just a little bit more time there in the morning. May it please the court. I'm Christopher Turner, the Assistant Attorney General, representing the defendants at Belize. And we, of course, ask that this court affirm the district court's dismissal of Mr. Courtney's action under Huckabee Humphrey because a judgment in his favor would necessarily invalidate both the MSR revocation and the resulting confinement pursuant to that MSR revocation. And, of course, he did not obtain a favorable termination of that. So let's suppose the claim is simply for not a year but a month. Okay. And that there are screw-ups in the Department of Corrections that delay finding an appropriate host site for a month. Certainly not enough time to obtain such a judgment. And he would no longer be in custody. I doubt a habeas remedy would be available to him. Is there any remedy at all under those circumstances? Under those circumstances, I mean, I don't know if there's other means of collateral relief he could get in such a short amount of time. But under Savory v. Cannon, I mean, still the unavailability of habeas as a practical matter would not affect the application of the HEC rule. But we don't have that situation here. He wasn't— Well, okay. He's trying all kinds of grievances that are being ignored. At least that's the evidence that we have to credit on summary judgment, I think. So I guess where I'm having trouble, as I hope was evident to you, is that this doesn't look like a finding of misconduct on his part, right? Well, not in the normal sense, except that he was violating his MSR conditions. He was failing to comply with them. Well, because what he proposed had been rejected. And clearly, there is an obligation under Illinois law and under DOC policy, is there not, to find an appropriate site as the parole board itself ordered here, correct? As expeditiously as possible. Well, we don't actually concede that there's a statutory or regulatory obligation to actually provide him with a housing site. As a matter of policy, as its own duty, or whether it's the PRB's revocation order, yes, the department does try to find sites. And we don't concede there was any site available. That's what the PRB's finding was, and that's still our position, that there was no available site that would comply with the requirements to be a proper host site for an offender. What do we do with the fact that the people who were supposed to find him the site and refer to, you know, submit him to the halfway house, we've got evidence that that just didn't happen. Well, that goes to the heart of what the heck rule is. I mean, yes, he claims that there was one available. We do not concede that there was ever a proper host site available for him. That's not my question. My question, he was, there is a much harder question lurking at the edges of this case, which is nobody can, that everybody tries really hard and they can't find an appropriate place. What we've got here is evidence that DOC officials failed to follow through as they were supposed to, to identify an appropriate host site. That is his claim. That is his claim and he has submitted evidence to support it, right? Correct. Okay, so we take that for granted for heck purposes now. Okay, so he hasn't engaged in misconduct, but we've got correctional officials arguably acting with deliberate indifference towards this, just letting him languish another year in prison. Well, Your Honor, I mean, in applying the heck rule, it's always going to be arguable that they are engaging in the deliberate indifference or whatever violation. But the question here is, it's not where he has been adjudicated to have done anything wrong. Well, he has, I mean, he has been found in the legal process, whether it was the violation of the door that was found originally with the warrant and then afterwards the PRB revocation. We never, the defendants were never able and the department was never defined the proper host site for him. He claims that it was given to them and that they were proper and they just failed to investigate. Right. But that's what's in dispute and it's that type of claim that falls under, that falls into the intersection of habeas and Section 93 where the heck rule comes into play. Well, I don't understand that's your position, but when, I've never seen heck applied to something that says release effective upon approval of a viable host with also orders that this should happen in as expeditious a manner as possible. Correct. We haven't had that before, but we still have a finding of the violation of his MSR conditions. But it's a unique violation though, is what I'm trying to suggest. Yeah, it's unlike other violations, but it's still like other violations that it is because he's violating those requirements for his MSR release that he's being confined. Right. That is why he's being under confinement, what Mr. Cornyn calls wrongful imprisonment. And that's what would that be appropriate remedy for such a, for relief from that would be under the habeas statute. That's the relief. And that's what tells you that if it's under habeas and that's the proper relief, that's the kind of relief you'd seek. The heck rule says that's the sole federal remedy, not Section 1983. But look, here's the problem. Why is this not catch 22? Here's his choice. He, very simply put, he will either be at a place that the state says, no, you can't be there, or he'll be homeless. Right. And that's not going to work either. The state's not going to allow him to be homeless roaming the streets. What's the answer for him? Well, I mean, the answer was for, he was, someone had to find the host site. He needed to try to find the host site. His host sites didn't comply. The department tried, was supposed to try to find a host site. They weren't able to, but his claim is it was due to misconduct on their part or deliberate indifference. The defendant's position is because they just weren't able to find one. However, the point is that's the claim that falls under heck. That when he's claiming it was their misconduct, then, I mean, if the relief that he would have had would have been under the habeas statute, then he was subject to the final termination rule. Now, if he was still in prison, he could still seek relief, whether through writ of mandamus, writ of certiorari. It wasn't, it wasn't that he was left without any sort of, in prison without any sort of means to try to challenge his incarceration or his confinement there. Prisoners file for writs of mandamus and writs of certiorari all the time. We face them even on the civil side here. He's legally allowed to leave, but he has no way to leave. If he's not in prison, he can't bring habeas, right? Correct. Yeah, I mean, I don't know what the conditions of the confinement were particularly, but yes, he's confined in prison until he gets out. Are you saying that he's out of prison? On the street, he can mandate. I don't even understand what you're trying to say here, because to me, this is like a classic catch-22. The fellow has nowhere to go and no one is helping him to find a place to go. And look, we are talking about a sex offender. There are almost no places to go to begin with. Do we know, Mr. Turner, how far up his grievances got in that year? Did they go as high as they could go, exclusive of the mandamus or the certiorari? Well, we know it was one grievance, which we know went through the system. Part of the dispute is whether or not the other grievances were ever filed. But in his claim, there is one, I believe, that went up and then went all the way up. I think in March 2014, the director concurred in its dismissal. Actually, in February or a little earlier, but I didn't get to him, I think he says, until March 2014. So that was still seven months before the expiration of his sentence. I mean, he was trying to use the grievance process. Or five months after he was supposed to be released, depending on how you look at it. And I'm going to go right back. Why isn't this a catch-22? Well, the catch-22 is that it's not a catch-22, but it's driven by his inability to find the host site. I mean, the problem is that he still has to find the host site. I mean, he says he couldn't find one. The one he gave, they investigated, the defendants found was not a proper host site for him. The other ones, they say they deny that they ever saw it or that he ever gave it to them, but he claims he did. But the catch-22 doesn't take it outside of, to the extent it would be one. I mean, just the inability to find a proper host site, that doesn't take action, his damages action, outside of the HEC rule. Well, that's the conclusion. I don't know any authority or even the analysis under how HEC applies. HEC applies because certain cases have been deemed by Congress to be appropriate for habeas relief. I mean, and this is what – the kind of claim he's making is exactly one of those claims. It's a case for – he's claiming wrongful imprisonment. That's where all of his injury, that's his alleged injury, that's where all of his damages flow from. It would – okay, the language of HEC was harm caused by actions whose unlawfulness would render a conviction or sentence invalid, right? Correct. Okay. So no challenge here to the original sentence, right, or conviction. So the conviction, the, quote, conviction you have to rely upon is the parole board finding of a, quote, unique – well, a violation, but one that's unique because they say let him out as soon as you can, right? No, Your Honor, because I do believe – And it's the failure to execute that sentence that he seems to be challenging, that order. Release him as soon as possible. Well, no, but the order said that he was violating – I mean, if you look at the order itself, I think it's at 132-6. And what the order says is that he violated his MSR conditions, and that's why his MSR was being revoked. As HEC – and now I'm thinking that does HEC give an incentive to prison administrators to ignore these types of grievances long enough, such that a prisoner is released and thus essentially has no remedy for the violations? Well, he does have the remedy in habeas, first of all. I mean, and also through the state – Only if he goes back to live in his prison. To be released from prison. And if he gets a favorable termination, then he would be entitled to damages at that point. But what it does say is that, no, if it's – this is the kind of relief that – if it's the kind of claim that you're trying to seek – that you're trying to challenge your wrongful confinement. I mean, and that's what the Supreme Court said in Wilkinson v. Dotson, which applied HEC. And while it ended up finding the HEC rule didn't apply in that matter, what it explained was that the HEC rule applies to any kind of substantive determinations which lengthen the time of confinement. In that case, it was a parole denial that was at issue. So, I mean, they do still – the Supreme Court has recognized that it extends not only to beyond the original convictions and sentences, but to parole denials, to any length of confinement because that's the underpinning of that is the intersection of the habeas. Would you agree that all of those examples, though, involve adjudications of wrongdoing by the prisoner? Well, they're all wrongdoing in the sense – yes. But when you get to a parole violation, it's wrongdoing that they've somehow violated their parole. I don't know – they're all necessarily – they're not necessarily committing a crime. No, I agree, but they're failing to do something that it is within their control to comply with, right? Well, no, Your Honor. I mean, this court has applied beyond that. I think it's the Easterling case. I want to – but when this case – we cited a decision, and that one was an MSR violation because he had been denied because he had refused. I suppose it's still within his control, but he refused to go to the housing site that they told him that he would go to. That's within his control, and that's also non-precedential, I know. Yeah, it's an unpublished opinion, Your Honor. That's correct. Court decision. Your Honors, I see I'm well past my time, so unless you have more questions for me, for the reasons set forth in our briefs, we ask that you affirm the district court judgment below. Thank you. Mr. McIntosh, come back, please. I'm happy to do so, Your Honor. I do have some points, but I would like to open up to questions from the court first to make sure I'm addressing everything that you have in mind. I think you know what we're addressing. Well, I think one thing that needs to be noted is that today, I believe, is the first time I've heard that they don't concede there was any site available. The record shows that Courtney submitted two other addresses for possible host sites that were never investigated. That was admitted by the designee witnesses, and as it relates to the halfway house, the evidence produced in the case, the subpoena we issued to Illinois Department of Corrections, was that 50 other offenders in the state of Illinois were sent to another Chance Ministries with release dates after Mr. Courtney's. So absolutely there is availability. That was the only halfway house he could go to. And this just goes back over and over again to the catch 22 that the state put Mr. Courtney in over and over. His only response is that Mr. Courtney was violating his MSR conditions. Mr. Courtney. But Mr. Courtney didn't do anything. It was that the state ignored him. That's why ultimately he remained confined for that period of time. And as it relates to the timing issues that Judge Hamilton brought up, I completely agree. I mean, there's a reason the prisoners go through the grievance process. It sat for five months before it came back down and they basically said, well, you were submitted for a halfway house anyways. That was the result. But he was never submitted for halfway house. Everything here was predicated on incorrect information and deliberate indifference, telling Courtney something that was false. We had to file a lawsuit and do discovery and take depositions to finally discover that he was never submitted for a halfway house. Under those circumstances, how would he even get habeas relief? He goes to the he goes to the state court and says, I'm supposed to be submitted to a halfway house. And then they respond just apparently as the state has responded today, which is. Well, we tried to submit him to a halfway house, but nothing was available. But that was false. So this basically affirming the district court will allow heck to be turned into an impossible to escape catch 22. This needs to be reversed. And I thank the court for its time. I do have a question. When he was finally released, right. Where did he go? Well, at that point, his his sentence had expired, so he didn't have to get IDOC approval. He this isn't part of the record, I don't believe. But he eventually moved into a house owned by his friend, Faye Milburn, who then subsequently became his wife. And she's now Faye Courtney. So. If there's nothing further, I would ask that the district court's judgment be reversed. Thank you. Thank you. He shall be taken under advisement. We thank all parties. Thank you.